```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 HOWARD LOWELL HENDERSON,

                    Plaintiff,             MEMORANDUM & ORDER
                                             21-CV-3304(EK)
          -against-


 MARTIN O'MALLEY, COMMISSIONER OF
 SOCIAL SECURITY,

                    Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Plaintiff Howard Henderson challenges the Social Security Administration's denial of his claim for disability insurance benefits. Before the court are the parties' cross-motions for judgment on the pleadings. For the following reasons, I grant Henderson's motion and deny the Commissioner's cross-motion.[1]

## I. Background

**A. Procedural Background**

Henderson applied for disability benefits in September 2018. Administrative Tr. ("Tr.") 79, ECF Nos. 11 to 16-2. He alleged a disability onset date of June 1, 2015. *Id.* The

---

[1] Per Federal Rule of Civil Procedure 25(d), Martin O'Malley, the current Commissioner of Social Security, is automatically substituted as the defendant. The Clerk of Court is respectfully directed to update the caption accordingly.

agency denied his claim.  *Id.*  An administrative law judge ("ALJ"), Robert Schriver, then held a hearing.  *Id.* at 1-24.  ALJ Schriver concluded that Henderson was not disabled because he could still perform his past work as a real estate sales agent.  *Id.* at 80-99.  The Appeals Council vacated this decision and remanded for the ALJ to reconsider whether Henderson's self-employed work in real estate sales truly qualified as "past relevant work" under 20 C.F.R. §§ 404.1560(b)(1) and 404.1565(a).  *Id.* at 102.

On remand, ALJ Schriver held a second hearing and again denied Henderson's claim.  *Id.* at 25-41, 51-70.  The ALJ reversed his initial basis for denial, concluding that Henderson's real estate sales work did not amount to past relevant work.  *Id.* at 62.  He went on, however, to conclude that Henderson could perform jobs that exist in substantial numbers in the national economy, as described in more detail below.  *Id.* at 63.  Accordingly, he denied benefits a second time.

After the second denial, the Appeals Council denied Henderson's request for review of the ALJ's decision, rendering it final.  *Id.* at 45-50.  Henderson timely sought review of that decision in this court.  ECF No. 1.

**B.     The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

   1.   <u>Timing of Onset</u>

To qualify for disability benefits, "a claimant must establish that [he] became disabled on or before the expiration of [his] insured status," *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 563 n.22 (S.D.N.Y. 2009) — his "date last insured." *See* 42 U.S.C. §§ 416(i), 423(c); 20 C.F.R. §§ 404.130, 404.315(a). "Evidence of an impairment that reached disabling severity after the expiration of an individual['s] insured status cannot be the basis for a disability determination, even [if] the impairment itself may have existed before the individual's insured status expired." *Norris v. Barnhart*, No. 1-CV-902, 2002 WL 31778794, at *4 (S.D.N.Y. Dec. 12, 2002); *see also Arnone v. Bowen*, 882 F.2d 34, 38 (2d Cir. 1989) (plaintiff can prevail only "if his continuous disability began before" the date last insured).

Here, Henderson alleged a disability onset date of June 1, 2015, and he was last insured for disability benefits on March 31, 2016 — approximately ten months later. Tr. 79. Thus,

3

he was required below to establish either the disability onset date he alleged, *or* that his disability reached disabling severity during the ten months following that date.

    2.   <u>Disability Evaluation Standard</u>

The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden at steps one through four of the sequential analysis. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). If the claimant is successful, the burden then shifts to the Commissioner at the fifth and final step. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

First, the ALJ determines whether the claimant was, between his alleged onset date and date last insured, engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). If not, then at step two, the ALJ evaluates whether the claimant had a "severe impairment" — that is, an impairment or combination of impairments that "significantly limit[ed]" his "physical or mental ability to do basic work activities." *Id.* § 404.1520(a)(4)(ii), (c). If the ALJ identifies a severe impairment, then at step three, he must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations — the "Listed Impairments." *Id.* § 404.1520(a)(4)(iii), (d); *see also id.* pt. 404, subpt. P, app.

4

1. If it does, the ALJ will deem the applicant disabled. *Id.* § 404.1520(a)(4)(iii).

Here, ALJ Schriver determined that Henderson did not engage in substantial gainful activity during the relevant period. Tr. 56. He also determined that Henderson suffered from three "severe impairments" during that period. *Id.* One of these — sarcoidosis (an inflammatory disease) — is most at issue in this case. Henderson was diagnosed, specifically, with sarcoidosis of the lungs, following work at Ground Zero in the aftermath of the September 11, 2001 attacks. *Id.* at 61; *see also id.* at 15. The ALJ also found two other severe impairments: plantar fasciitis (foot inflammation) and "flat feet." *Id.* at 56. The ALJ determined that none of these three impairments, however, rose to the level of a Listed Impairment. *Id.* at 57.

When the ALJ finds that the claimant had severe impairments that do not meet the requirements of the Listings, he must determine a claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). The RFC is the most a claimant could do in a work setting notwithstanding his limitations. *Id.* § 404.1545(a)(1). The ALJ concluded here that Henderson had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the limitations that he could have no exposure to temperature extremes, and no concentrated exposure

5

to respiratory irritants.  Tr. 57.  But the ALJ's RFC determination did not include one limitation called for by Henderson's treating pulmonologist: that he would need to be "absent from work as a result of" his respiratory "impairments or treatment . . . [a]bout one day per month."  *Id.* at 1914; *see id.* at 62.

At step four, the ALJ considers whether, in light of the RFC determination, the claimant could have performed "past relevant work."  20 C.F.R. § 404.1520(a)(4)(iv), (f).  Here, the ALJ found that Henderson could not have performed his past work as a police officer or as an army sergeant (and that his self-employed work in real estate sales did not qualify as "past relevant work").  Tr. 62.

At step five, the ALJ evaluates whether the claimant could have performed jobs existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(v), (g).  The ALJ determined that Henderson could have performed such jobs, including as a cashier, price marker, or sales attendant.  Tr. 62-63; *see* 20 C.F.R. § 404.1520(a)(4)(v), (g).  This determination came despite the treating pulmonologist's opinion that Henderson would have been absent from work once a month on average, and the testimony of the SSA's vocational expert, who testified that employers would not, generally speaking, tolerate

6

"[a]bsenteeism of one to two times per month on a consecutive month basis." Tr. 39.

Given these conclusions, the ALJ determined that Henderson was not disabled. *Id.* at 63.

## II.  Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess*, 537 F.3d at 127.[2] "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

## III.  Discussion

Henderson argues that the ALJ incorrectly concluded that he could perform jobs existing in significant numbers in

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

7

the national economy during the relevant period.  Specifically, Henderson argues that the ALJ should have concluded that he could not have performed such jobs because he would have needed to be absent from work about once per month.  *See* Mem. of L. in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem.") 19, ECF No. 19.  Henderson argues that the ALJ improperly evaluated the medical source statement of Dr. Gita Lisker, Henderson's treating pulmonologist, who opined that Henderson would likely be absent about once per month.  *See id.* at 13.[3]  Given this error, Henderson contends, the ALJ's RFC determination was not supported by substantial evidence.  *See id.* at 19.

In addition, Henderson argues that the ALJ improperly evaluated Henderson's testimony about his respiratory symptoms in concluding that those symptoms were less severe than claimed.  *See id.* at 17–19.

For the following reasons, I concur that the ALJ did not adequately address Dr. Lisker's estimate of Henderson's absenteeism.

**A.   Revised Regulations for Evaluating Medical Opinions**

The Social Security Administration repealed its "treating physician rule" prior to Henderson's application for

---

[3] Certain documents are duplicated in the record.  This order cites to only one copy of each document.

8

benefits.[4]  Under the revised regulations applicable here, the Commissioner "no longer needs to assign particular evidentiary weight to treating sources or their opinions."  *Vellone ex rel. Vellone v. Saul*, No. 20-CV-0261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, No. 20-CV-261, 2021 WL 2801138 (S.D.N.Y. July 6, 2021).  Still, the SSA commits itself to "articulat[ing] in [its] determination or decision how persuasive we find all of the medical opinions" in the case record.  20 C.F.R. § 404.1520c(b).

The regulations require an ALJ to evaluate medical opinions and findings based on factors including, among others: (1) their supportability (*i.e.*, the extent to which a source explains his or her opinion, and supports it with objective medical evidence); (2) consistency (*i.e.*, the extent to which it is consistent with other evidence — medical and nonmedical — in the record), (3) the source's relationship with the claimant (including the length of the relationship and frequency of visits), and (4) the source's specialization (*i.e.*, education and training).  20 C.F.R. §§ 404.1520c(c).

---

[4] As noted above, Henderson filed his application with the SSA in September of 2018.  The repeal of the SSA's treating physician rule became effective on March 27, 2017.  The old rule was replaced by new regulations set forth in 20 C.F.R §§ 404.1520c and 416.920c.  *See, e.g.*, *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021).

The first two factors above — supportability and consistency — are the "most important factors"; accordingly, the ALJ is required to explain his consideration of them. *Id.* § 404.1520c(b)(2). The regulation does not require the ALJ to explain his consideration of the remaining factors. *Id.* These are not especially formalistic requirements.[5] In the end, an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," so long as he has weighed "all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

**B.   The ALJ's Assessment of Dr. Lisker's Opinion**

Dr. Lisker had treated Henderson since 2014 for pulmonary sarcoidosis and reactive airway disease. She was the only treating source who opined on Henderson's limitations in a work setting. Among other things, she completed a checkbox / fill-in-the-blank Pulmonary RFC Questionnaire on July 11, 2019. Tr. 1911-14.

Dr. Lisker noted symptoms of shortness of breath, chest tightness, wheezing, and episodic acute asthma twice per year. *Id.* at 1911. Her records reflect tests showing

---

[5] Even when the treating physician rule applied, the ALJ was still free to discount a treating physician's opinion as long as he provided "good reasons" for doing so. *E.g.*, *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

10

"obstruction" in the lungs and "decreased diffusion capacity," though, as the ALJ noted, "the dates of these findings were not provided." *Id.* at 61. Lisker opined that Henderson was not "a malingerer." *Id.* at 1911. She recorded Henderson experiencing no side effects from his pulmonary medications, *id.* at 1912, and described Henderson's prognosis as "good." *Id.*

She did indicate, however, that one or two times per month, Henderson would need to take an "unscheduled break" to sit quietly. *Id.* at 1913. More importantly, Dr. Lisker indicated that Henderson's impairments were "likely to produce 'good days' and 'bad days,'" and — as indicated above — she estimated that Henderson would need to be absent from work about one day per month due to his impairments or treatment. *Id.* at 1914. She did not further explain this opinion. *See id.* Dr. Lisker also noted that Henderson should avoid all exposure to extreme cold or heat and cigarette smoke, and he should avoid concentrated exposure to high humidity, perfumes, soldering fluxes, solvents or cleaners, fumes, odors, gases, dust, and chemicals. *Id.* at 1913-14.

ALJ Schriver found Dr. Lisker's medical source statement, as a whole, "somewhat persuasive." Tr. 62. He noted that it was authored in July 2019, more than three years after Henderson's date last insured, and that it therefore had "minimal relevance to the period being considered," from 2015 to

11

2016. *See id.* Nevertheless, the ALJ accepted Dr. Lisker's assessment of certain limitations: the "restrictions on exposure to temperature extremes and respiratory irritants" were "supported by the record," he found. *Id.* But he included no other limitations on the performance of light work in Henderson's RFC. *See id.*

The ALJ did *note* Dr. Lisker's estimate that Henderson "would be absent from work about once a month due to his impairments." *Id.* While the ALJ discounted Dr. Lisker's opinion as a whole, finding it only "somewhat persuasive" because of its vintage, *see id.*, he did not opine on the accuracy or persuasiveness of this absenteeism estimate in particular. *See id.*

This omission warrants remand. The ALJ accepted some aspects of Dr. Lisker's opinion, such as the temperature limitation, and plainly rejected or discounted others, as indicated by his "somewhat persuasive" determination. The problem is that we do not know into which of these categories the absenteeism estimate falls. If Dr. Lisker's estimate regarding absences is correct, and the vocational expert is correct that employers would not tolerate such absences, then the RFC conclusion must logically be wrong. *See Fortuna v. Saul*, No. 19-CV-11066, 2021 WL 961798, at *21 (S.D.N.Y. Mar. 15, 2021) (remand required where the ALJ "impermissibly overlooked

12

potential functional limitations that may disqualify Plaintiff from work").

On remand, the ALJ should indicate the level of persuasiveness attached to Dr. Lisker's absenteeism estimate in particular, and the reasons for that finding.  And if more information is needed about the basis for the absenteeism estimate or the time frame to which it applies, the ALJ should consider endeavoring to supplement the record.  *See, e.g.*, *id.* at \*30 (remanding with such instructions).

## C. Jobs Existing in Significant Numbers in the National Economy

As a final note, it is not clear that substantial evidence supports the ALJ's conclusion that the jobs Henderson could perform existed in significant numbers in the national economy.  The ALJ found, based on vocational expert testimony, that Henderson could work as, among other things, a "price marker."  Tr. 63.[6]  The only record evidence that price marker jobs existed in any numbers in 2015 and 2016 is the testimony of

---

[6] According to the SSA's Dictionary of Occupational Titles, a price marker "[m]arks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets.  Ties, glues, sews, or staples price ticket to each article.  Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article.  May record number and types of articles marked and pack them in boxes.  May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor of discrepancies.  May print information on tickets, using ticket-printing machine . . . ."  *209.587-034 Marker*, *Dictionary of Occupational Titles* (4th ed. 1991), 1991 WL 671802.

the vocational expert, who did not specify when her data was last updated. *See* Tr. 38. The court questions whether "significant" numbers of such jobs truly do persist. Among other things, there have been recent reports that the Dictionary of Occupational Titles, from which the "price marker" job was drawn, includes jobs that have become virtually extinct in the United States. *See* Lisa Rein, *Social Security Denies Disability Benefits Based on List with Jobs from 1977*, Wash. Post. (Dec. 27, 2022)[7]; *see also Wagner v. Comm'r of Soc. Sec.*, 620 F. Supp. 3d 3, 5 (E.D.N.Y. 2022). Given the prevalence of bar codes, PLU (price look-up) codes and the like, it seems unlikely that significant numbers of price markers continued to wield pricing guns, or do similar work, in the nation's retail outlets in 2015 and 2016.[8]

That said, "[b]ecause plaintiff has not raised this issue, the Court declines to address it *sua sponte*." *Reed v. Comm'r of Soc. Sec.*, No. 18-CV-0169, 2019 WL 4643605, at *1

---

[7] https://www.washingtonpost.com/politics/2022/12/27/social-security-job-titles-disabled-applicants-obsolete/).

[8] *See, e.g.*, Chris Tyas, *How Next-Gen Barcodes Will Revolutionise In-Store and Online Retail*, Grocer (April 6, 2023) (reporting that "fifty years ago," the author "was tasked with manually applying stickers to each and every product," but that "within a few years" of that experience, "the barcode was omnipresent," obviating the need for such efforts). URL: https://www.thegrocer.co.uk/technology-and-supply-chain/how-next-gen-barcodes-will-revolutionise-in-store-and-online-retail/678057.article.

(W.D.N.Y. Sept. 24, 2019).  The ALJ may elect to consider it on remand.

## IV.  Conclusion

For the reasons set forth above, Henderson's motion for judgment on the pleadings is granted and the Commissioner's cross-motion is denied.  The matter is remanded for further proceedings consistent with this Order.

SO ORDERED.

      /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    January 11, 2024
          Brooklyn, New York